**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT COLE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 06 C 4704 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM AND ORDER

Pursuant to Rule 12(b)(6), paramedics Sean Finn, Caruso Locket, David Navarro, and David Jamison seek to dismiss the counts against them (Counts IV, V, VIII, IX, and X) in the fifth amended complaint. For the reasons set forth below, their motion is granted in part and denied in part.

**I.     Background**

Despite multiple amendments, the basic factual allegations in this case have remained consistent. The following facts are taken from the fifth amended complaint and are deemed to be true for the purposes of the motion to dismiss. On July 14, 2005, after experiencing chest pains, plaintiff Robert Cole called 911. An ambulance arrived and transported Cole to Roseland Hospital.

Upon Cole's arrival, Chicago Fire Department paramedic Demond Ward (who subsequently passed away on March 11, 2007) allegedly pulled Cole from the ambulance and slammed him to the ground. Ward next forced Cole into the emergency room and verbally threatened him, and then dragged him back outside, where he battered and assaulted Cole. Other uniformed Chicago Fire Department paramedics present at the scene failed to intervene to stop

the attack on Cole. Following the beating, Cole called the police to report the incident and the paramedics agreed amongst themselves to lie about what had happened. Police officers arriving on the scene arrested Cole for aggravated battery.

The court previously dismissed Cole's § 1983 failure to intervene claims against the paramedic defendants raised in a prior version of the complaint without prejudice, holding that the paramedic defendants did not act under color of state law based on their status as state actors. The fifth amended complaint's allegations regarding the paramedic defendants are subtly different from the allegations in the prior versions of the complaint. Count IV (§1983 failure to intervene claim) adds an allegation that the paramedics' failure to intervene was in contravention of their "official duties" as Chicago Fire Department employees and in violation of the "Code of Conduct" of the Chicago Fire Department. Fifth Amended Complaint at ¶¶ 73 and 74. In Count V of the fifth amended complaint, Cole alleges that the defendant paramedics are liable under state law because they acted willfully and wantonly when they failed to intervene and filed false official reports. *See id*. at ¶¶ 88 and 89. Other differences between the current complaint and the complaint before the court when it considered the last round of motions to dismiss are that Cole dropped his §1983 claim against the paramedics for denial of medical attention and added claims for violation of due process (Count VIII) and §1983 conspiracy (Count IX).

To recap, the current iteration of the complaint contains thirteen counts, and the following counts seek relief against the defendant paramedics and are the subject of the motion to dismiss presently before the court: Count IV (§ 1983 failure to intervene against defendant paramedics), Count V (willful and wanton conduct against defendant paramedics), Count VIII (§ 1983 due process against defendant paramedics and others), Count IX (§ 1983 conspiracy against

defendant paramedics and others), and Count X (intentional infliction of emotional distress against Ward and the defendant paramedics).

## II. Discussion

### 1. Standard of Review

In ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). According to the Seventh Circuit, this language imposes two hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007), *quoting Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964 (2007). Second, the factual allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* Meanwhile, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *See Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

2. **Cole's Claims Against the Paramedic Defendants**

1. **§ 1983 – Count IV (failure to intervene), Count VIII (due process), & Count IX (conspiracy)**

a. **Color of State Law**

The City begins by arguing that all of Cole's § 1983 claims against the paramedic defendants fail because the paramedic defendants were not acting under color of state law when they decided not to come to Cole's aid. The court has already noted that "[n]ot every action by a state official or employee is to be deemed as occurring 'under color' of state law." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989); *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1516-17 (7th Cir. 1990) (collecting cases holding that "a mere assertion that one is a state officer does not necessarily mean that one acts under color of state law"). Instead, an action is taken under color of state law when it "involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . . As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001) (internal quotations omitted).

Paramedics are state actors for purposes of § 1983 when they act as "public employees acting in the course of their normal duties." *Ramirez v. City of Chicago*, 82 F. Supp. 2d 836, 840-41 (N.D. Ill. 1999) (paramedics have a duty to provide medical care to individuals in police custody); *Salazar v. City of Chicago*, No. 84 C 10156, 1985 WL 2482, at *2 (N.D. Ill. Sep. 09, 1985) (paramedics acted under color of state law when deciding whether to treat the plaintiff).

The previous motion to dismiss rejected Cole's position that the paramedic defendants were state actors solely by virtue of their employment by the state. As the court explained:

> Here, Cole's § 1983 claims against paramedic defendants Finn, Lockett, Nacarro, and Jamison appear to be premised on his belief that these defendants acted under color of state law merely because they are state employees. For the reasons discussed above, this assumption is incorrect. Accepting the allegations of the complaint as true, Finn, Lockett, Nacarro, and Jamison stood by while Ward assaulted Cole, but were not performing any paramedic duties at the time. Finn, Lockett, Nacarro, and Jamison thus appear to be substantively interchangeable with any random bystander. This means that based on Cole's allegations, these defendants were not acting under color of state law when they allegedly failed to intervene to protect Cole. *See Zienciuk v. City of Chicago*, No. 01 C 3769, 2002 WL 1998309, at *6 (N.D. Ill. Aug. 28, 2002) (defendant police officers were not acting under color of state law during bar fight because "they behaved the same way non-police officers would behave").

The current iteration of the complaint attempts to address the court's ruling by adding allegations supporting Cole's claim, including an allegation that the defendant paramedics agreed to falsify their accounts of what happened. There is no indication that writing up reports of incidents occurring while a paramedic is on the job is outside the normal scope of a paramedic's duties. Accordingly, the complaint sufficiently alleges that the paramedic defendants acted under color of state law so that dismissal of all of the § 1983 counts based on an alleged lack of any actions taken under color of state law would be improper.

### b. § 1983 – Failure to Intervene (Count IV)

The defendant paramedics next argue that because Cole was not in custody at the time of the assault, they had no authority or duty to intervene under state law, and thus cannot be liable under § 1983. The allegations of the current complaint make it clear that Cole was not free to leave the scene once he arrived at the hospital. Cole alleges that Ward pulled him from the ambulance, slammed him to the ground, forced him into the emergency room and verbally

threatened him, and then dragged him back outside, where Ward battered and assaulted him. At this point, the uniformed paramedic defendants failed to intervene to stop the attack on Cole.

The Constitution does not automatically require all state actors to provide competent medical assistance or rescue those in need. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). The Supreme Court has nevertheless acknowledged that this general rule does not apply to persons in custody. *Id*. at 199-201. The so-called "'custody exception' triggers a constitutional duty to provide adequate medical care to incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pre-trial detainees, and those under 'other similar restraint of personal liberty.'" *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005), *quoting DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. at 200; *see also Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991) (the government "has no constitutional duty to provide competent [rescue] services to people not in its custody").

Persons are under a "restraint of personal liberty" under the Supreme Court's decision in *DeShaney* when paramedics take "some state action that applies force (or the threat of force)" or engage in a "show of authority made with the intent of acquiring physical control." *Id*. The Sixth Circuit's decision in *Jackson v. Schultz* applying this rule is instructive. In *Jackson*, an unconscious shooting victim died during ambulance trip to hospital, allegedly due to the defendant EMTs' failure to provide life support. The court held that he was not in custody as that term was used in *DeShaney*, explaining that the EMTs:

> did not cause decedent to be shot nor did they render him unconscious. There is no allegation that the EMTs restrained or handcuffed the decedent. There is no allegation that the decedent was not free to leave the ambulance or be removed

-6-

from the ambulance. Decedent's liberty was "constrained" by his incapacity, and his incapacity was in no way caused by the defendants.

*Jackson v. Schultz*, 429 F.3d at 591.

Here, the allegations in the current complaint clearly support the conclusion that Cole was not free to leave during the alleged attack by Ward. Indeed, according to the complaint, Cole tried to leave and was physically prevented from doing so and was then assaulted.[1] At that point, the on-duty paramedics at the scene acquired a duty to intervene to prevent the use of excessive force because the allegations in the complaint support a conclusion that Cole was in custody. *Id*. at 590 (state actors have a constitutional duty to intervene and provide adequate medical care to individuals who are in custody under *DeShaney*); *see also Salazar v. City of Chicago*, 940 F.2d at 237 ("If [the plaintiff] was in custody from the time the paramedics arrived – that is, if he was not free to seek other forms of assistance – then the paramedics might be liable for violating [the plaintiff's] right to due process by failing to treat his injuries"). In this regard, the court notes that it is not making a definitive finding that Cole was in custody for the purposes of *DeShaney*. Instead, it is concluding Cole has pleaded sufficient facts to survive a motion to dismiss. *See Salazar v. City of Chicago*, 940 F.2d at 237 (declining to address impact of the parties' dispute as to whether the plaintiff was in the custody of the paramedics or, instead, was free to leave, because the paramedics' attorney conceded at oral argument that the plaintiff was a pretrial detainee).

---

[1] The City mentions in passing that it is unclear whether a paramedic can place someone in custody. While the parties did not brief this issue in detail, based on the present record, the court declines to adopt a bright line rule that police are the only governmental actors who may hold citizens "in custody" under *DeShaney* and its progeny.

At the point that the paramedic defendants failed to intervene when they were constitutionally obligated to do so, they necessarily acted under color of state law because, as the court has previously held, a state employee acts under color of state law when his allegedly wrongful actions are related to the performance of his official duties. Accordingly, the paramedic defendants' motion to dismiss Cole's § 1983 failure to intervene claim (Count IV) is denied.

### c. § 1983 – Substantive Due Process (Count VIII)

Cole alleges that Ward, the defendant paramedics, and the defendant police officers conspired to deprive him of his constitutional rights by withholding exculpatory information and preparing false reports. According to Cole, absent this conduct, he would not have been arrested or prosecuted based on the events at the hospital. The parties' briefs clarify that the exculpatory evidence at issue is a videotape of the incident, and Cole argues that the paramedic defendants knew about the video but did not disclose it, and that a whistleblower told him about the video approximately two years later. The parties also agree that Cole pleaded guilty to battery the day after his arrest, but that his conviction was subsequently expunged.

Cole's substantive due process claim is rooted in *Brady v. Maryland*, 373 U.S. 83 (1963), which stands for the proposition that the rights to due process and a fair trial require prosecutors to provide all potentially exculpatory evidence to the defense. The Seventh Circuit has held that under *Brady*, police officers must also turn over potentially exculpatory evidence when they provide investigative files to the prosecution. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). The parties dispute whether *Brady* reaches paramedics.

The court will not attempt to sort out the parties' arguments, which use "color of state law" cases to support their views regarding the scope of *Brady* because Cole's *Brady* claim is barred for a wholly unrelated reason. Cole contends that an acquittal in criminal court does not bar a subsequent *Brady* claim. In this case, however, Cole pleaded guilty, and his guilty plea was later vacated. The Supreme Court has held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *U.S. v. Ruiz*, 536 U.S. 622, 628-33 (2002). Even if the paramedics were required to turn the tape over to Cole (an issue which the court need not reach), his guilty plea means that he cannot pursue a claim against them for their failure to do so. Accordingly, Cole's substantive due process claim against the defendant paramedics is dismissed.

### d. § 1983 – Count IX (conspiracy)

The paramedic defendants have moved to dismiss Cole's conspiracy count, contending that if his other § 1983 claims are dismissed, he cannot state a claim for conspiracy. Because the court denied the paramedic defendants' motion to dismiss all of Cole's § 1983 claims, their motion to dismiss his conspiracy claim is denied.

### 2. State Law Claims – Failure to Intervene (Count V) & Intentional Infliction of Emotional Distress (Count X)

#### a. Failure to Intervene

In Count V, Cole contends that the paramedic defendants had a duty to intervene under state law, which provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS § 10/2-202. "In an action for willful and wanton misconduct, the plaintiff

must establish (1) the existence of a duty, (2) breach of that duty, and (3) an injury proximately resulting from that duty." *Wade v. City of Chicago*, 364 Ill.App.3d 773, 781 (1st Dist. 2006). The parties dispute whether the defendant paramedics had a duty to rescue Cole from the alleged assault by their fellow paramedic, Ward.

As a general rule, state actors in Illinois do not have a duty to protect citizens against the criminal acts of third persons unless there is a special relationship between the parties or the criminal act was reasonably foreseeable. *Rice v. White*, 374 Ill.App.3d 870, 884 (4th Dist. 2007). There are four types of "special relationships": "(1) common carrier and passenger, (2) innkeeper and guest, (3) business invitor and invitee, and (4) voluntary custodian and protectee." *Green v. Carlinville Community Unit School Dist. No. 1*, 381 Ill.App.3d 207, 217 (4th Dist. 2008). None of these categories are applicable here, and Cole has not alleged that the paramedic defendants could have reasonably foreseen that Ward would act as he allegedly did on the night in question.

The court thus turns to Illinois laws specifically governing the responsibilities of paramedics. *See* Emergency Medical Services Act, 210 ILCS § 50/17. Paramedics are required to "provide reasonable care in treatment or transport." *Watts v. City of Chicago*, 325 Ill.App.3d 288, 292 (1st Dist. 2001). Here, the alleged breach of duty is the paramedic defendants' failure to intervene to protect Cole, as opposed to the breach of a duty to treat or transport. Thus, the paramedic defendants did not have a duty under state law to intervene in order to rescue Cole. *See id*. (dismissing failure to intervene claim brought against paramedics by plaintiff who was struck in eye with bottle by a third party after he exited an ambulance because the alleged duty to intervene was beyond the scope of the duty to treat or transport).

Because the alleged duty breached by the defendant paramedics is the duty to intervene, as opposed to the duty to treat or transport, Cole's reliance on *American Nat. Bank & Trust Co. v. City of Chicago*, 192 Ill.2d 274, 285-86 (Ill. 2000), is unpersuasive. In that case, the estate of a 911 caller who died due to paramedics' decision to leave her home without going in to provide medical care sued the paramedics. The Illinois Supreme Court held that the allegations in the plaintiff's amended complaint were sufficient to require the trier of fact to determine whether the defendants' conduct was willful and wanton. Notably, however, *American Nat. Bank & Trust Co.* involved the alleged breach of a failure to treat. The failure to treat expressly falls within the scope of a paramedic's duty to treat and transport. The duty to intervene, on the other hand, is outside the scope of the duty to treat and transport.

The court also acknowledges Cole's argument that the defendant paramedics had a duty to rescue him based upon regulations that govern paramedics' duties. Unfortunately for Cole, Illinois courts have rejected this precise argument. *See Wade v. City of Chicago*, 364 Ill.App.3d at 773, 781 (1st Dist. 2006) ("Violation of self-imposed rules or internal guidelines . . . does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct") (internal citations and quotations omitted). Thus, Cole's state law duty to intervene claim is dismissed.

### b.  Intentional Infliction of Emotional Distress

The paramedic defendants argue that Cole's intentional infliction of emotional distress claim must be dismissed if his state law failure to intervene claim is dismissed. In response, Cole contends that even if his state law failure to intervene claim is dismissed, he can still proceed

with his intentional infliction of emotional distress claim because he has pleaded sufficient facts to avoid dismissal.

The defendant paramedics' argument with respect to this count is extremely brief. In their motion (at page 8-9) and reply (at page 10), they assert that *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006), supports the proposition that an intentional infliction of emotional distress claim must fail if the plaintiff does not plead the existence of an underlying duty. The court's reading of this case is not so broad. *Lopez* sets forth the elements for an intentional infliction of emotional distress claim: (1) extreme and outrageous conduct by the defendants; (2) taken with the intent to cause severe emotional distress, or with the knowledge that the conduct would cause such distress; and (3) severe emotional distress. *Id*. The cited portion of Lopez relies on *McGrath v. Fahey*, 126 Ill.2d 78 (Ill. 1988), which also sets forth the elements for an intentional infliction of emotional distress claim and then analyzes those elements.

Because the elements of an intentional infliction of emotional distress claim, as set forth by both the Seventh Circuit and the Illinois Supreme Court, do not require the plaintiff to allege the existence of an underlying duty, the paramedic defendants' motion to dismiss Cole's intentional infliction of emotional distress claim on this ground is denied.

### III. Conclusion

For the above reasons, paramedics Sean Finn, Caruso Locket, David Navarro, and David Jamison motion to dismiss portions of Cole's fifth amended complaint [#157] is granted in part and denied in part. Specifically, Count V (willful and wanton conduct/duty to intervene under state law) and Count VIII (§ 1983 due process) are dismissed, and the remainder of the defendant

paramedics' motions, which is directed at Count IV (§ 1983 failure to intervene), Count IX (§ 1983 conspiracy) and Count X (intentional infliction of emotional distress) is denied.

DATE:   November 14, 2008

_____Blanche M. Manning_____
Blanche M. Manning
United States District Judge